

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:24-cr-00612 |
| | ) | Judge Bucklo |
| vs. | ) | Magistrate Judge Cole |
| | ) | RANDOM / Cat. 3 |
| | ) | Violation: 18 U.S.C. § 1343 |
| RICARDO VILLAR, JR. | ) | |

COUNT ONE

The SPECIAL JUNE 2024 Grand Jury charges:

1. At times material to the indictment:

a. Company A was a business located in Chicago, Illinois that, among other things, offered account receivable factoring to other businesses located across the United States. An account receivable factoring transaction is a transaction in which a factoring business purchases a receivable of, or amount due to, another business in return for a fee or percentage of the receivable. After purchasing the receivable, the factoring company collects the amount owed from the customer of the business that sold the receivable to the factoring company.

b. RICARDO VILLAR, JR. was the owner of, and along with Individual A, an officer of Precision Rotables Aviation, Inc., which was a corporation registered in Florida and purportedly engaged in the business of aircraft parts fabrication and repair.

c. Company B was part of a corporate group of privately owned airlines that were headquartered in Ypsilanti, Michigan that operated fleets of

aircraft and provided cargo and charter services to customers across the United States.

2. Beginning in or around August 2018, and continuing through at least in or around March 2020, in the Northern District of Illinois and elsewhere,

RICARDO VILLAR,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from Company A by means of materially false and fraudulent pretenses, representations, and promises, and by the concealment of material facts, which scheme is further described below.

3. It was part of the scheme that defendant fraudulently obtained more than $5 million from Company A by selling account receivables purportedly due to Precision Rotables from Company B or one of its related entities well knowing that no such receivables or amounts were owed to Precision Rotables by Company B or its related entities.

4. It was part of the scheme that, in or around January 2019, defendant entered into a Funding and Security Agreement with Company A pursuant to which Company A agreed to purchase the receivables of Precision Rotables in return for a percentage of the amounts owed to Precision Rotables by its customers.

5. It was further part of the scheme that, in order to induce Company A to enter into the Funding and Security Agreement, defendant provided documents to Company A that contained false representations, which documents included a factoring application, personal financial statement, list of customers, equipment

appraisal, and personal tax returns. The false representations made in these documents consisted of, among other things, the false representation that Company B was one of Precision Rotables's primary customers and owed money to Precision Rotables when, in fact, defendant knew that Precision Rotables did no business with Company B or any of its related entities.

6. It was further part of the scheme that, between in or around January 2019 and February 2020, for the purpose of fraudulently causing Company A to purchase the amounts purportedly due and owing to Precision Rotables as receivables, defendant submitted and caused the submission of false and fictitious work orders, invoices, and proof of shipment forms for goods and services purportedly provided by Precision Rotables to Company B when defendant knew that no such goods or services had been provided to Company B.

7. It was further part of the scheme that defendant caused a relative, Individual A, to incorporate a corporation in Florida with a name that mimicked the name of Company B and its related entities.

8. It was further part of the scheme that defendant caused payments made by Company A for receivables purchased from Precision Rotables to be transferred to bank accounts opened by Individual A in the name of the Florida corporation that mimicked the name of Company B and its related entities. Defendant then caused payments from the bank account opened in the name of that Florida corporation to be made to Company A in order to make it falsely appear that Company B or one of

its related entities was making payments to Company A in connection with the receivables purchased by Company A.

9. It was further part of the scheme that defendant provided Company A with the name of real and fictitious employees of Company B along with false contact information for the purpose of facilitating purported communications related to the purported receivables sold by Precision Rotables to Company A.

10. It was further part of the scheme that defendant established and caused the establishment of domain names with names similar to the domain names used by Company B and its related entities, and caused the domain names to be used in email communications in order to make it falsely appear that Precision Rotables and Company A were communicating with employees of Company B or a related entity.

11. It was further part of the scheme that defendant used and caused the use of the real and fictitious names of Company B employees, as well as the domain names with names similar to the domain names used by Company B and its related entities, to create emails addressed to Precision Rotables and Company A in order to make it falsely appear that Company B or one of its related entities was engaged in business with Precision Rotables.

12. It was further part of the scheme that defendant concealed, misrepresented, and hid, and caused to be concealed, misrepresented and hidden, the existence, purposes, and acts done in furtherance of the scheme.

13. On or about February 27, 2020, in the Northern District of Illinois, Eastern Division,

RICARDO VILLAR, JR.,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a communication related to the electronic transfer of $158,248.23 from Company A to an account held in the name of Precision Rotables in connection with the purchase of receivables;

In violation of 18 U.S.C. § 1343.

## COUNT TWO

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraphs 1 through 12 of Count One are incorporated here.

2. On or about January 30, 2020, in the Northern District of Illinois, Eastern Division,

RICARDO VILLAR, JR.,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a communication related to the electronic transfer of $167,912.80 from Company A to an account held in the name of Precision Rotables in connection with the purchase of receivables;

In violation of 18 U.S.C. § 1343.

## COUNT THREE

The SPECIAL JUNE 2024 GRAND JURY further charges:

3. Paragraphs 1 through 12 of Count One are incorporated here.

4. On or about January 2, 2020, in the Northern District of Illinois, Eastern Division,

RICARDO VILLAR, JR.,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a communication related to the electronic transfer of $93,861.61 from Company A to a bank account held in the name of Precision Rotables in connection with the purchase of receivables;

In violation of 18 U.S.C. § 1343.

_____
FOREPERSON

_____
ACTING U.S. ATTORNEY